LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, State Bar No. 144074
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone:   (818) 347-3333
Facsimile:   (818) 347-4118

LAW OFFICE OF MELANIE T, PARTOW
Melanie T. Partow, Esq., State Bar No. 254843
melaniepartow@gmail.com
4470 Atlantic Ave # 17433
Long Beach, CA 90807

SCOTT D. HUGHES, APLC
Scott D. Hughes, Esq. (Bar No. 253611)
620 Newport Center Drive, Suite 1100
Newport Beach, CA 92660
Telephone: (714) 423-6928
Facsimile: (714) 845-0030
E-mail: scott@scotthugheslaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY CRAIG, and GARY WITT, individually and as successors in interest to BRANDON LEE WITT, deceased,<br><br>Plaintiffs,<br>vs.<br><br>COUNTY OF ORANGE, and NICHOLAS PETROPULOS, an individual, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. CV 17-CV-00491 CJC (KESx)<br><br>[*Honorable Cormac J. Carney*]<br><br>**DECLARATION OF CAROL SOBEL AND EXHIBITS 1-13 IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES**<br><br>[*Filed concurrently herewith*: Notice of Motion and Motion for Attorney Fees; Memorandum of Points and Authorities in Support; Declaration of Dale K. Galipo; Declaration of Melanie T. Partow; Declaration of Scott D. Hughes; Declaration of Kelsi Brown Corkran; Declaration of Joseph Mead; Declaration of Elizabeth R. Cruikshank; and [Proposed] Order].<br><br>Date:        February 27, 2023<br>Time:        1:30 p.m.<br>Ctrm:        9B |

17-cv-00491-CJC-KESx

DECLARATION OF CAROL SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

## DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.      I am an attorney admitted to practice before the Supreme Court of California and the United States District Court for the Central District of California, among other federal courts.  I have personal knowledge of the facts herein and, if called to testify to those facts, could and would do so competently.

2.      I graduated from law school and was admitted to practice in 1978. Following 20 years with the ACLU Foundation of Southern California, I entered private  practice in April of 1997.  My practice primarily involves complex civil rights litigation, focusing on the rights of homeless persons, First Amendment rights and police practices.  Exhibit 1 is my resumé.

3.      I received many awards for my legal work over the years.  In 2008, I was named a California Lawyer of the Year (CLAY) recipient for civil rights by California Lawyer Magazine.  That same year, I was also named as one of the Top 75 Women Litigators in California by the Daily Journal Corporation.  In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work and was also named by the Daily Journal as one of the Top 100 Most Influential Lawyers in  California.  In 2013 and again in 2014, I was named one of the top 50 women lawyers in Los Angeles.  I am named as a Superlawyer in the area of First Amendment  or  civil  rights  litigation  consistently  for  nearly  two  decades. Additional recognition of my legal work is set out in my attached resumé.

4.      For the six years prior to 1997, I was a Senior Staff Counsel in the legal department of the ACLU Foundation of Southern California.  During that time period, I was responsible for preparing many of the fee motions in cases where the ACLU represented the prevailing party.  Because the ACLU does not bill clients on an hourly basis for its services, I was required to obtain information to establish reasonable market rates for the ACLU lawyers.  It was my practice to obtain current billing rates for lawyers of comparable skill and experience at

DECLARATION OF CAROL SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

several firms throughout the City. I did this on an annual basis, contacting partners familiar with the ACLU lawyers in question so that they could assess the comparable skill levels of attorneys at their firms to establish ACLU billing rates. At the time that I consulted these individuals, I was aware that the partners had been personally involved in pro bono litigation with the ACLU and worked directly with the ACLU lawyers for whom I sought to establish market billing rates, so they were able to assess the skill and experience of the ACLU lawyers.

5. As a sole practitioner, I assess reasonable market rates by comparison to lawyers of comparable skill and experience at other firms in the Los Angeles area, as when I was employed by the ACLU. Since entering private practice, I continue to survey firms each year to obtain relevant comparisons for billing rates. I generally begin this process the first time in each year I prepare a fee motion or enter into settlement discussions regarding fees. As part of my survey, I make it a point to obtain information concerning rates for attorneys in both larger law firms engaged in complex litigation, as well as smaller civil rights law firms.

6. I also review attorney fee applications and awards in cases other than my own. Specifically, I review fee applications submitted by, and awards to, private attorneys practicing the range of civil rights law, as well as court awards made to the ACLU, Disability Rights Legal Center ("DRLC"), Asian Americans Advancing Justice, the Western Center on Law and Poverty ("WCLP"), MALDEF and other public interest groups in Los Angeles. I do this to determine what is being sought and approved as market rates for lawyers from these firms. Because many of the cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I have access to those billing rates as well.

7. When I become aware of a case where statutory fees are sought, I obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as PACER, LEXIS and Westlaw. My practice is to obtain copies of motions, supporting declarations and

DECLARATION OF CAROL SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

fee awards from public sources, including the Los Angeles Superior Court website.

8.    My practice is to obtain copies of fee applications submitted in class actions, as well, where the Court is obligated to do a lodestar review even where the award is ultimately no more than the percentages allowed by the Ninth Circuit. Included in my review of fee applications and awards are those by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these firms.  Many of these firms also serve as pro bono counsel on occasion.

9.    My declarations in support of fee applications for civil rights and public interest attorneys have been cited repeatedly by courts as evidence of reasonable market rates in several jurisdictions but primarily in the Los Angeles legal market.  For example, in *Nadarajah v. Holder*, 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of the application of attorneys from the ACLU for fees under the Equal Access to Justice Act ("EAJA").  In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (CD CA 2008), granting fees pursuant to the IDEA statute, 20 U.S.C. §1415(i)(3)(c), the Court cited to my declaration as persuasive evidence of market rates.  In *Atkins v. Miller*, CV 01-01574 DDP (CD CA 2007), Judge Pregerson awarded fees to a 1975 graduate at $675 an hour, specifically citing to my declaration and that of Barry Litt to support the requested rates.  *Id.* at pp. 8-9 and n.4.  Additional cases in which my declarations have been cited favorably include, among others, *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (May 30, 2012); *Orantes-Hernandez v. Holder*, 713 F.Supp.2d 29, 963-964(C.D.Cal.2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Hiken v. DOD*, 836 F.3d 1037 (9th Cir. 2016); *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles*, *supra*; *Dugan v. County of Los Angeles,* cv-11-08145 CAS (C.D. Cal. March 3, 2014); *Flores v. City of Westminster*, SA-CV-11-

DECLARATION OF CAROL SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

0278 DOC (C.D. Cal. Oct. 23, 2014); *Xue Lu v. United States*, 2014 U.S. Dist. LEXIS 77789 (C.D. Cal. May 23, 2014); *Wagafe v. Trump*, Case 2:17-cv-00094-RAJ [Doc. 223] (W.D. WA 02/27/19); *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal. January 4, 2018) [Doc. 180, p.5]; and *Carrillo v. Schneider Logistics,* awarding fees in Circuit Case No. 12-55042 (9th Cir. Apr. 2014), following the affirmance of a preliminary injunction (*See* 501 Fed. Appx. 713, 2012 U.S. App. LEXIS 26601 (9th Cir. Dec. 28, 2012). The Ninth Circuit recently cited to my declaration in approving EAJA rates for the ACLU and other immigration attorneys in *Gomez-Sanchez v. Barr, sub nom Gomez-Sanchez v. Sessions,* 892 F.3d 985 (9th Cir. 2018). In *Jochimsen*, a unanimous court held that I was qualified as an expert on reasonable market rates.

10. I litigated statutory fee issues at the appellate level in several cases, including *Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604 (2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal.4th 533 (2004), affirming continued vitality of the "catalyst" fee doctrine in California and upholding almost $2 million in fees in a multi-plaintiff sexual discrimination/harassment lawsuit on behalf of female employees of the Los Angeles Police Department. I was also counsel in *Jones v. City of Los Angeles*, 555 Fed. Appx. 659 (2014), establishing entitlement to fees as a "prevailing party" based on the Circuit's necessary approval of a settlement that was conditioned on vacatur of the panel decision.

11. I provide training on attorney fees best practices for civil rights and public interest firms, including the Legal Aid Foundation of Los Angeles and the ACLU. I also have done CLEs on attorney fees for the National Lawyers Guild and the National Police Accountability Project.

12. I have considerable experience reviewing and analyzing billing records in my own cases and in cases for which I provide a supporting declaration on the reasonableness of rates or hours. Many of these cases

involve multiple attorneys and law offices. For the cases where I am counsel of record, I am usually the attorney who conducts a review of all of the fee records and exercises billing judgment to eliminate any impermissible hours. This includes, among other issues, eliminating clerical tasks, unnecessarily duplicative items, improperly billed items and vague items. For example, in the *Tipton-Whittingham* case cited above, it was my responsibility to review the fee records covering six years of litigation for attorneys from three firms: the ACLU, the Western Regional Office of the NAACP Legal Defense Fund, and Litt & Associates. The unadorned lodestar in *Tipton* in 2000 was approximately $1,900,000.

13. In *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*, involving a police assault on a lawful demonstration in MacArthur Park on May Day, 2007, I performed a billing judgment on the fee records for about two-dozen attorneys and support staff in the case. The case was a hybrid class action, with 300 individual plaintiffs and a residual class of several thousand persons, so the legal team was sizable. The fee approved in the case was $3,713,000.

14. With a few exceptions not relevant here, California attorney fee principles are the same as federal law. In all the fee declarations that I prepare, I apply my understanding of the U.S. Supreme Court decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons." *Id.* at 895 fn. 11. I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate with the possibility of receiving a market rate award if successful. *See, Nadarajah v Holder,* 569 F3d at 910.

15. When available, I also look to rates awarded to the attorney in

-5-     17-cv-00491-CJC-KESx

previous cases. I understand such awards to be strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 976 (9th Cir. 2008). Past decisions where "a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market." *Carson v. Billings Police Dept.*, 470 F. 3d 889, 892 (9th Cir. 2008).

16.    Next, I look to billing rates by attorneys engaged in similarly complex litigation to set market rates for civil rights attorneys who do not bill on an hourly basis. *See Blum*, 465 U.S. at 895. *Blum* notes that most civil rights attorneys, including at non-profits, take cases on a contingency basis. *See Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008)* (approving use of declarations of other attorneys regarding prevailing rates in the relevant market and rates in other cases). I use court awards setting reasonable hourly rates in a variety of cases based on my understanding that the market rate comparison "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (internal quotation omitted).

17.    When the specific rate evidence identified in the preceding paragraph is available, I do not rely on surveys because, in my opinion, they do not meet the standards for the lodestar analysis. In my experience, fee surveys report market rates in sweeping categories with no identification of the comparable skill, experience and reputation of specific attorneys included in the survey and often no indication of the relevant legal market. *See e.g., Shirrod v. Director, Office of Workers' Compensation Programs*, 809 F.3d 1082, 1089 (9th Cir. 2015) (reversing where lower court relied on a national survey rather than local rates). For example, the Real Rate Report sets out "mean" rates by quartile. Although the full report provides breakdown by subject matter and legal market, the data crushes a large

DECLARATION OF CAROL SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

group of attorneys into the same box without any information about the skill, experience or reputation of specific lawyers.

18.    I do not apply rates billed by and paid to opposing counsel who are usually salaried, contract government attorneys, or retained insurance defense lawyers.  These groups generally charge rates well below market and are paid win or lose, so they do not share the risk of fee-shifting statutes and other contingent fees.  *See e.g., Shapiro v. Paradise Valley Unified School Dist.*, 374 F.3d 857, 866 (9th Cir. 2004) (government lawyers and retained defense attorneys generally bill at lower rates, so they do not reflect the same legal market). *See also,* Pearl, *California Attorney Fee Awards*, CEB 2012, §9.109 (2012).

19.    Finally, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the hours, not the lodestar rate. *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F3d 1041, 1046 (9th Cir. 2009).

20.    To support my opinion in this motion, I attach fee awards and declarations in cases in the Los Angeles legal market. Each is a true and correct copy of the document available in the Court's files.  Where an order is two years or more older, I note that and provide a calculation of the current rate based on government data on the cost-of-living increases since the award, as explained more fully in paragraph 21 below.  In *Hiken v. DOD*, the Court noted that "market rates in effect more than two years *before* the work was performed" are not current lodestar rates. 802 F.3d at 1107 (9th Cir. 2016) (emphasis in original).

21.    Prior to 2020, I applied a minimum 3.1 percent annual increase, which was the average legal services component rise in the Consumer Price Index for Los Angeles pre-pandemic. *See* http://www.bis.gov/news.release/cpi.102.htm (Table2.Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average by detailed expenditure category).  For subsequent years, I apply a higher rate to reflect the greater inflation over the past two years.  These are adjustments for inflation only and do not reflect adjustments of base compensation pay scales.

22. In my experience, billing rates in Los Angeles have increased annually at more than the cost-of-living rate to reflect both increased experience and increases in the base rates. For example, in *Charlebois v. Angels Baseball, LP*, 2012 U.S. Dist. LEXIS 91069, cv 10-0853 DOC (C.D. Cal. May 30, 2012), Judge Carter rejected the defense argument that the rate then sought by attorney V. James DeSimone should be limited to what he had received in prior years. "[C]ourts routinely recognize that fee rates increase over time based on a variety of factors." 2012 U.S. Dist. LEXIS 91069, *24. In *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07-1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012), the Court approved an increase of 10 percent in one year, noting "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice."

23. I have not filed a contested fee motion in my cases in several years other than to seek Court approval of fees in class-action settlements through a lodestar analysis, or to settle non-class cases. The last such application I filed applied a 2022 rate of $1,150 an hour in *Carroll v. Orange County*, 19-cv-00614 DOC, a class action challenging the County's regulations disqualifying formerly homeless persons from General Relief based on the improper valuation of housing placements. Final approval of the motion is pending.

24. In May 2019, my rate of $1,000 was used to calculate my fees in *Mitchell v. City of Los Angeles*, Case No. 2:16-cv-01750-SJO-JPR (C.D. Cal.). In the same year, this rate was applied for the lodestar cross-check in a class action, *Chua v. City of Los Angeles*, Case 2:16-cv-00237-JAK-GJS. Prior to these 2019 cases, I resolved attorney fees in several matters applying rates of $900 an hour up to $975. The last court-awarded fee I received in a contested fee motion was from the Ninth Circuit, approving my 2014 rate of $875 an hour in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015). My current rate is $1125 an

hour, which is an increase of about 3.2 percent annually from the court-approved rate of $875 for 2014 in *CPR for Skid Row*. More recently, rates ranging from $1000 to $1100 have been approved for me in the context of a lodestar review of a motion for final approval of a class action.

25. I understand counsel seek the following 2022 rates in this action:

| Attorney | Firm | Graduation | Experience | Rate |
|---|---|---|---|---|
| Dale Galipo | Galipo | 1984 | 39 | $1200 |
| Melanie Partow | Partow | 2004 | 19 | $850 |
| Kelsi Brown Corkran | Georgetown | 2005 | 18 | $1075 |
| Joseph Mead | Georgetown | 2007 | 16 | $850 |
| Scott D. Hughes | Hughes | 2007 | 16 | $780 |
| Elizabeth Cruikshank | Georgetown | 2015 | 8 | $733 |

26. In my opinion, these are within the range of reasonable rates in the current Los Angeles legal market for attorneys of the skill, experience and reputation of the attorneys addressed in this motion for fees. I know Mr. Galipo and Ms. Partow personally and am familiar with their skill, experience and reputation. I first met Ms. Partow when she worked in the office of my colleague, Paul Hoffman, after she graduated from law school and passed the Bar. I currently interact with her in her role as a clinical professor at UCI Law School. Students in their class assist with various cases in which I am co-counsel. Based on my discussions with other civil rights attorneys in California, I am of the belief that many highly skilled civil rights lawyers share my view that they are both exceptionally experienced and skilled and that Mr. Galipo is one of the premier trial attorneys in the nation.

27. I am familiar with Kelsi Brown Corkran based on her work in police practices issues. In addition, we are both active participants in the National Police Accountability Project (NPAP). Although I do not personally know the other attorneys for whom fees are sought, I reviewed their declarations. Based on that information, I believe them to be highly skilled and experienced.

DECLARATION OF CAROL SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

**DALE GALIPO**:

28.    Dale Galipo seeks a rate of $1200 an hour.  In my opinion, that rate is consistent with, and in the mid-range of, rates approved in the Los Angeles legal market for attorneys with comparable skill and experience and, increasingly, attorneys with less skill and experience.  I am aware that some courts have applied 1988 as the base year for Mr. Galipo, when he opened his own firm.  As the exhibits attached to my declaration show, the rate he requests of $1200 for 2023 is reasonable applying the 1988 date and crediting him with 35 years of experience.

29.    As support for my opinion on the reasonableness of the requested rates, I attach several recent decisions awarding attorney fees in the Los Angeles legal market.  Attached at Exhibit 2 is the 2019 decision by Judge Bernal in *McKibben v. John McMahon*, EDCV 14-2171 JGB (SPx) (2019), approving fees based on a lodestar analysis for attorneys at Kaye, McLane, Bednarski & Litt and the ACLU of Southern California.  The specific rates approved included $875 for Dave McLane and Ron Kaye, with 32 and 30 years of experience, respectively, and $715 for Melissa Goodman, then with 15 years of experience.  Ex. 2, p.17.  Applying a modest CPI increase for 2020, 2021, 2022 and 2023, the rate for McLane and Kaye in 2023 would be at least $1050 an hour.  Mr. Galipo has three years more experience than Mr. McLane and five more than Mr. Kaye had in 2019.

30.    Attached at Exhibit 3 is the Declaration of Michael H. Strub filed in support of a motion for attorneys' fees by the prevailing party in an anti-SLAPP lawsuit in Los Angeles Superior Court, *Nelson v. Bridgers*, LASC Case No. 21STCV35635. The declaration avers that the motion is based on 2022 billing rates for attorneys at Greenberg Gross, based in Costa Mesa.  Ex. 3, ¶¶ 23; 27.  The 2022 rate for Alan Greenberg and Wayne Gross, both 1988 law graduates, is $1,400 a year. *Id.*  This is about 15 percent higher than Mr. Galipo's 2023 rate.

31.    Attached at Exhibit 4 is the order awarding fees in *Garcia v. Seltzer-Dorene Management Co., Inc.*, LASC Case BC 699421 (2021), at 2021 rates for

-10-                    17-cv-00491-CJC-KESx

attorneys at Shegerian & Associates, a plaintiff's-side employment firm. The Court's tentative Order, marked as Exhibit 1 to the attached Exhibit 4, sets out the specific rates approved and the analysis applied by the Court. The approved rates for all counsel are contained in Table C, page 13 of the tentative ruling. The rate of $1300 an hour for was approved for Mr. Shegerien. Ex. 4, pp. 8. I reviewed his credentials on the State Bar website and believe he was admitted in1990. In 2021, Mr. Shegerian had four years less experience than Mr. Galipo has now.

32.    Attached at Exhibit 5 is the Declaration of Eric Rowen in support of a motion for fees in *Simons v. Superior Court*, LASC Case No. 19STCP01994, for attorneys at Greenberg Traurig. They sought fees at historical rates for 2018 and 2019 in a complex business matter. The Court's award was upheld on appeal in an unpublished decision available at 2022 Cal. App. Unpub. LEXIS 1854.

33.    In *Simons,* a subsequent motion was filed for fees for the appeal: ("*Simons* II"). The rates approved for the second fee motion are set forth in the Declaration of Eric Rowen. Exhibit 6. Mr. Rowen's 2021 approved rate was $1380 an hour. He averred that he is a 1982 law graduate and practices real estate law. Fees were also approved for Scott Bertzyk, listed as a 1984 law graduate, at the 2021 rate of $1,260 an hour. In paragraphs 36 and 37 of the Rowen declaration, he states that the firm's rates increased by about five percent from 2020 to 2021. Applying that same percentage, the 2023 rate for Mr. Rowen would be about $1500 an hour and for Mr. Bertzyk it would be about $1,390 an hour. Based on this rate of increase in 2020 and 2021, and assuming Mr. Bertzyk and Mr Galipo are comparably skilled and experienced in complex federal litigation, with two years of additional experience, Mr. Bertzyk's 2023 rate would be about 16 percent higher than Mr. Galipo's.

34.    Attached at Exhibit 7 is the 2020 Declaration of Laurie Largent filed in *In re Banc of California Securities Litigation*, Case No. SACV 17-00118 AG (DFMc) (CD Cal.) Ms. Largent avers that fees were based on 2019 rates. I

-11-                     17-cv-00491-CJC-KESx

reviewed the firm's website to determine each attorney's experience.  The approved rates included $1,040 an hour for Laurie Largent, a 1988 law graduate, and $1,150 for Spencer Burkholz, a 1990 graduate.  Adjusted for inflation over four billing years, both rates would now top Mr. Galipo's requested rate of $1,200 an hour.

35.    To support my opinion on the extrapolation of current rates for Robbins, Geller attached at Exhibit 8 is the list of attorneys and rates at Robbins, Geller submitted as Exhibit A to the Declaration of Luke O. Brooks, Doc. 127-5, filed in support of the lodestar fee analysis in *Fleming v. Impax Lab'ys Inc.*, No. 16-cv-06557-HSG, 2022 U.S. Dist. LEXIS 125595 (N.D. Cal. July 15, 2022).   As I estimated, Mr. Burkholz's 2022 rate is $1200 an hour.  Ex. 8.  As noted above, he is a 1990 law graduate, with two years' less experience than Mr. Galipo.

36.    I also reviewed a fee application and award to attorneys at Gibson Dunn in *Herring Networks, Inc. v. Maddow*, Case No. 19-cv-1713 BAS-AHG (SD CA 2021), an anti-SLAPP lawsuit.  The Court's order approving fees is attached at Exhibit 9.  A copy of partner Scott Edelman's declaration in support of the fee motion is attached at Exhibit 10. He averred that the 2020 rates sought in San Diego were the then-customary billing rates for the firm in the Los Angeles legal market.  Among the attorneys for whom fees were sought were Theodore Boutrous ($1525 an hour for 2020), Scott Edelman ($1395 an hour for 2020), and Nathaniel Bach ($960 an hour for 2020). Ex. 9, pp. 9-10.  The Court held that the relevant legal market was San Diego and approved  2020 San Diego-based rates of $1,150 for Mr. Boutrous, $1,050 for Mr. Edelman, and $720 for Mr. Bach. Ex. 9, p. 13. Based on my review of the Gibson Dunn website, I believe that Mr. Boutrous is a 1987 law graduate and Mr. Edelman is a 1984 law graduate and a classmate of Mr. Galipo.  Based on my review of the  website for Mr. Bach's current employment, Manatt Phelps, I believe he is a 2006 graduate.

37.    The 2023 rate of $1,200 an hour requested by Mr. Galipo is well below the 2020 customary billing rates in the Los Angeles legal market at Gibson

DECLARATION OF CAROL SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

Dunn & Crutcher and just $50 above the reduced San Diego rate approved for Mr. Boutrous in 2020.  Mr. Boutrous' 2020 rate of $1525 an hour in the Los Angeles legal market is more than 25 percent higher than the 2023 rate sought by Mr. Galipo. In 2020, Mr. Boutrous had 33 years of experience. Using the 1988 starting date for Mr. Galipo's practice, he now has two more years of experience than Mr. Boutrous had in 2020.  The 2020 rate of $1,395 an hour for Scott Edelman is approximately 16 percent higher than the 2023 rate requested for Dale Galipo.  In 2020, Mr. Edelman had 36 years of experience; Mr. Galipo has 35 years using the 1988 starting date.  Applying even a minimal annual CPI increase of 3.1 percent, the current rate for an attorney with the same experience at Gibson Dunn would be about $1,530 an hour, nearly 30 percent above Mr. Galipo's requested rate.

38.    As additional support for my opinion on the reasonableness of the rates, attached at Exhibit 11 is the Order approving fees for attorneys at Gibson, Dunn & Crutcher in *Isaacs v. USC Keck School of Medicine*, Case NO. 2:19-CV-08000-DSF-RAO (C.D. CA. 2020), an anti-SLAPP case.  While the Court noted that Gibson Dunn's rates were on the "higher side," they were, nonetheless, found to be within the range of reasonable rates for the Los Angeles legal market.  *Id.* at p. 3. Because the Court's order did not set out the specific rates approved, I attach at Exhibit 12 the Declaration of James Fogelman in support of the motion for fees.

39.    In his declaration, Mr. Fogelman averred that he is a partner at Gibson Dunn & Crutcher, that he graduated from law school in 1992 and that his 2020 hourly rate was $1,350 an hour.  Ex. 12, ¶ 2.  In 2020, Mr. Fogelman had 28 years of experience, six years less experience than Mr. Galipo has now.

**KELSI BROWN CORKRAN**

40.    I am informed that Kelsi Brown Corkran is seeking $1,075 an hour, the customary billing rate for an attorney of her skill, experience and reputation at Orrick, Herrington & Sutcliffe, where she was employed prior to joining the

-13-                                    17-cv-00491-CJC-KESx

Georgetown law faculty.  In my opinion, that rate is within the range of reasonable rates for attorneys who practice in the United States Supreme Court, as well as the Los Angeles legal market.

41.    Attached at Exhibit 13 is the declaration of Kathleen B. Hartnett of Cooley LLP field in the United States District Court for Idaho following a successful opposition to certiorari in *Edmo v. Department of Corrections*, 935 F.3d 757 (9th Cir. 2019), *cert denied*, 141 S. Ct. 610 (2020).  Ms. Hartnett avers to the 2021 customary billing rates for attorneys at Cooley who were involved in preparing the opposition to certiorari.  Her 2021 rate for Supreme Court practice was $1,250 an hour.  Ex. 12, ¶ 19.  Ms. Hartnett graduated from law school in 2000. *Id.* at ¶ 4.  She has three more years of experience than does Ms. Corkran, with a 2021 rate nearly 16 percent above the $1,075 Ms. Corkran seeks for 2022.

42.    In addition to Ms. Hartnett, in *Edmo* Cooley sought fees for Barrett Anderson, identified as a ninth-year associate, at $1,070 an hour, just $5 an hour below the 2022 rate for Ms. Corkran.  Cooley also requested fees for several attorneys who left the firm at some point after the opposition brief was filed. These included Elizabeth Prelogar at $1,085 per hour and Scott Stemetzki, described as a seventh-year associate, at $970 an hour.  Ex. 12, ¶ 19.  Based on my review of the Harvard Law School website, Ms. Prelogar is a 2008 graduate of HLS. *See* [As solicitor general, Elizabeth Prelogar '08 carries on a Harvard Law School legacy - Harvard Law School | Harvard Law School](#).  In 2021, Ms. Prelogar had four years less experience than Prof. Corkran has now.

43.    Ms. Hartnett attests that the rates sought by Cooley are consistent with the rates for attorneys who regularly practice in the Supreme Court, regardless of where the case arose.  *Id.*  Based on my own considerable experience in appellate work, I am aware that there is a relatively small group of lawyers who have considerable expertise in Supreme Court practice.

44.    In addition to the specific rates for Supreme Court practitioners, Prof.

DECLARATION OF CAROL SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

Corkran's requested rate is also consistent with the customary billing rates for Gibson Dunn in the Los Angeles legal market. In Exhibit 10, Gibson Dunn partner Scott Edelman avers that the 2020 rate for Nathaniel Bach, a 2006 law graduate, was $960 an hour, just $115 an hour below the 2023 rate sought for Prof. Corkran, a 2005 law graduate. The differential is roughly $28 an hour annually.

**MELANIE PARTOW**

45. The approved 2019 rates for the Greenberg Traurig firm in *Simons* of $890 an hour for Matthew Gershman, a 2007 law graduate, and $880 an hour for Karen Bohmboldt, a 2004 law graduate, are both higher than the 2022 rate requested for Melanie Partow. Ex. 5, p.7. Karen Bohmboldt graduated the same year as Ms. Partow. In 2019, Matthew Gershman had six years less experience than Ms. Partow has now and Karen Bohmboldt had three years less.

46. Greenberg Traurig filed a motion for additional attorney fees for the appeal. Mr. Rowen filed a declaration in support of the motion, setting out the firm's rates for 2020 and 2021. Exhibit 6. He averred that the 2021 rate for Mr. Gershman was $935 an hour. Ex. 6, p.9 ¶ 37. Mr. Gershman had four years' less experience than Ms. Partnow has now

47. Attached at Exhibit 7 is the Declaration of Laurie Largent filed in support of a request for fees by Robbins Geller Rudman & Dowd LLP, a class action law firm based in San Diego. Among the attorneys at Robbins Geller for whom fees were approved was Matthew Alpert at $800 an hour. Based on my review of the State Bar website, I believe Mr. Alpert is a 2005 graduate. In 2019, he had 14 years of experience, four years less experience than Ms. Partow has now. His 2019 rate is barely 2.5 percent below Ms. Partow's requested 2023 rate.

48. In Exhibit 8, Robbins Geller sought approval for a rate of $840 an hour for Eric Niehaus, identified on the firm's website as a 2005 law graduate, and $780 an hour for Jeffrey Stein, listed as a 2009 law graduate. Mr. Niehaus has one year

DECLARATION OF CAROL SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

less experience than Ms. Partow and Mr. Stein has five years less experience.

49.    In *Isaacs*, the rate for Shannon Mader at Gibson Dunn was $915 an hour. Ex.12.   Based on my review of the firm's website, Mr. Mader is also a 2004 law graduate.  He had two years less experience in 2020 than Ms. Partow has now.

**JOSEPH MEAD**

50.    Mr. Mead seeks a rate of $850 an hour based on the Adjusted Laffey Matrix, setting out rates for the DC Metro area.  He is identified in his declaration as a 2007 law graduate.  In my opinion, this rate is reasonable, if not low, for Mr. Mead.  I am very familiar with the Adjusted Laffey Matrix, now known as the United States Attorneys' Office Attorney's Fee Matrix.  Although it is widely used in the DC Circuit, it is generally not given the same weight by courts in the Ninth Circuit because of its methodology. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("We thus cannot fault the district court for declining to use the *Laffey* Matrix"). The Matrix lumps attorneys together in large spans without taking into account specific skill, experience and reputation, the elements of comparison required by the Supreme Court's lodestar analysis.

51.    To state the obvious, an attorney with 19 years of experience is likely to have considerably more skill and experience than an attorney with 11 years of experience, yet both are assigned a rate of $829 an hour.  *See* Adjusted Laffey Matrix at: matrix (laffeymatrix.com).  Additionally, the Matrix does not recognize the skill and experience of Supreme Court practitioners and distinguish them from an attorney with the same years of experience in an area of law that does not require comparable skill to that of a Supreme Court practitioner.

52.    To illustrate, in Exhibit 12, Cooley LLP sought fees for Barrett Anderson, a ninth-year associate, at $1,070 an hour, $250 an hour above the 2022 rate for Mr. Mead, who has 16 years of experience.  If Cooley applied the rates in the Laffey Matrix, Mr. Anderson's rate would be $733 an hour. *See*: matrix

(laffeymatrix.com).   Cooley also requested fees for Elizabeth Prelogar at $1,085 per hour and Scott Stemetzki, a seventh-year associate, at $970 an hour.  Ex. 12, ¶ 19.  Based on my review of the Harvard Law School website, Ms. Prelogar is a 2008 graduate.  *See*   As solicitor general, Elizabeth Prelogar '08 carries on a Harvard Law School legacy - Harvard Law School | Harvard Law School.  Applying the rates in the Adjusted Laffey Matrix, Ms. Prelogar's rate would be $829 and Mr. Stemetzki's rate would be $508.  *See*: matrix (laffeymatrix.com).

53.     Mr. Mead's requested rate is supported by the fees approved for the Shegerian law firm in *Garcia*.  There, the Court approved the 2021 rates of $900 an hour for Anthony Nguyen and $850 an hour for William Reed.  Mr. Nguyen is identified in the Court's order as a 2008 law graduate.  Ex. 4, p.4. The approved 2021 rates for Mssr. Nguyen and Reed are both higher than the 2023 rate of $850 an hour requested for Joseph Mead, a 2007 law graduate,

54.     Mr. Mead's requested rate is also supported by the 2019 and 2020 customary billing rates of $915 and $960 for Nathaniel Bach in *Herring*.  Ex. 10, ¶¶ 18, 19.  Mr. Bach is identified as a 2006 law graduate.  In 2020, he had two years' less experience than Mr. Mead has now.

55.     As an additional point of comparison, Mr. Mead's requested rate is well below the 2021 rate of $935 an hour for Matthew Gershman in *Simons*  Ex. 6.  Mr. Gershman and Mr. Mead are both 2007 law graduates.

**SCOTT D. HUGHES**

56.     The rate requested for Mr. Hughes is $780 an hour.  Plaintiffs' counsel provided me with the time records and/or declaration for each biller.  I reviewed Mr. Hughes' time records in this motion and concluded that he did not have responsibility for the brief in opposition to certiorari. While he is a skilled trial lawyer, those are different skills than Mr. Mead has, even though both are 2007 law graduates.

DECLARATION OF CAROL SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

57.     The rate of $780 an hour for an attorney with 16 years' experience is well within the range of reasonable rates in the Los Angeles legal market.

**ELIZABETH CRUIKSHANK**

58.     Ms. Cruikshank, a 2015 law graduate, now has eight years of experience and requests a rate of $733 an hour based on the Adjusted Laffey Matrix.  As noted above, the Laffey Matrix does not distinguish the skills required for lawyers who practice in the Supreme Court and lawyers who practice in less complex areas of litigation.  By comparison, in *Edmo*, Cooley LLP applied the 2021 rate of $970 an hour for Scott W Stemetski, then a seventh year associate at the firm and $1070 for a ninth-year associate, Barrett Anderson.  Ex. 12, ¶ 19.

59.     The 2019 rates approved for attorneys at Greenberg Traurig also support the reasonableness of Elizabeth Cruikshank's rate.  In *Simons*, the 2019 rate for Christopher Ramos, identified as a 2014 law graduate, was $695, barely six percent below Ms. Cruikshank's requested 2022 rate. Exhibit 5, ¶ 22.  In 2019, Mr. Ramos had four years of experience.  As noted above, the graduation years for the Greenberg Traurig attorneys are in Mr. Rowen's declaration.  Ex.5, p. 7.

60.     In *Garcia*, the Court approved  $650 an hour for Mark Lim, identified a 2016 law graduate, and noted that the Hon. Victor Chavez previously approved the same rate for him.  Ex 3, p.5 (Order).   In 2021, Mr. Lim had three years' less experience than Ms. Cruikshank has now. The rate of $733 an hour for Ms. Cruikshank is about a four percent annual increase over Mr. Lim's 2021 rate.

61.     Ms. Cruikshank's rate is also reasonable when compared to the rate for Marissa Moshell, a 2017 law graduate at Gibson Dunn.  In the Edelman declaration, Ms. Moshell's 2019 rate is $625 an hour and $740 an hour for 2020.  Ex. 10, pp. 4,5.  With four more years of experience, Ms. Cruikshank's rate for Supreme Court work is below Gibson Dunn's 2020 rate for Ms. Moshell.

DECLARATION OF CAROL SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

62. The chart below sets out the rates referenced in my declaration.

| Ex. | Attorney | Graduation | Award | Experience | Rate |
|-----|----------|-----------|-------|-----------|------|
| Ex.2 | Dave McLane | 1986 | 2019 | 32 | $   875.00 |
| Ex.2 | Ron Kaye | 1988 | 2019 | 30 | $   875.00 |
| Ex.2 | Melissa Goodman | 2004 | 2019 | 15 | $   715.00 |
| Ex.3 | Alan Greenberg | 1988 | 2022 | 34 | $1,400.00 |
| Ex.3 | Wayne Gross | 1988 | 2022 | 34 | $1,400.00 |
| Ex.4 | Carney Shegerian | 1990 | 2021 | 31 | $1,100.00 |
| Ex.4 | Anthony Nguyen | 2006 | 2021 | 15 | $   900.00 |
| Ex.4 | William Reed | 2006 | 2021 | 15 | $   850.00 |
| Ex.4 | Mark Lim | 2016 | 2021 | 5 | $   650.00 |
| Ex.5 | Karen Bohmboldt | 2004 | 2019 | 15 | $   880.00 |
| Ex.5 | Matthew Gershman | 2007 | 2019 | 12 | $   890.00 |
| Ex.5 | Christopher Ramos | 2014 | 2019 | 5 | $   695.00 |
| Ex.6 | Eric Rowen | 1982 | 2021 | 39 | $1,380.00 |
| Ex.6 | Matthew Gershman | 2007 | 2021 | 14 | $   935.00 |
| Ex.7 | Laurie Largent | 1988 | 2020 | 32 | $1,040.00 |
| Ex.7 | Spencer Burkholz | 1990 | 2020 | 30 | $1,150.00 |
| Ex.7 | Matthew Alpert | 2005 | 2019 | 14 | $   800.00 |
| Ex.8 | Spencer Burkholz | 1990 | 2022 | 32 | $1,200.00 |
| Ex.8 | Eric Niehaus | 2005 | 2022 | 17 | $   840.00 |
| Ex.8 | Jeffrey Stein | 2009 | 2022 | 13 | $   780.00 |
| Ex.9 | Theodore Boutrous | 1987 | 2020 | 33 | $1,150.00 |
| Ex.10 | Theodore Boutrous | 1987 | 2020 | 33 | $1,525.00 |
| Ex.10 | Theodore Boutrous | 1987 | 2019 | 32 | $1,450.00 |

DECLARATION OF CAROL SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

| Ex.10 | Scott Edelman | 1984 | 2020 | 36 | $1,395.00 |
|-------|---------------|------|------|----|-----------| 
| Ex.10 | Scott Edelman | 1984 | 2019 | 35 | $1,335.00 |
| Ex.10 | Nathaniel Bach | 2006 | 2019 | 14 | $ 915.00 |
| Ex.10 | Nathaniel Bach | 2006 | 2020 | 15 | $ 960.00 |
| Ex.10 | Marissa Moshell | 2017 | 2019 | 2 | $ 625.00 |
| Ex.10 | Marissa Moshell | 2017 | 2020 | 3 | $ 740.00 |
| Ex.12 | Shannon Mader | 2004 | 2020 | 16 | $ 915.00 |
| Ex.13 | Kathleen Hartnett | 2000 | 2021 | 31 | $1,250.00 |
| Ex.13 | Barrett Anderson | 2012 | 2021 | 9 | $1,070.00 |
| Ex.13 | Elizabeth Prelogar | 2008 | 2021 | 13 | $1,085.00 |
| Ex.13 | Scott Stemetski | 2014 | 2021 | 7 | $ 970.00 |

63.    Based on the foregoing, I believe the rates sought are well within the range of reasonable market rates in the Los Angeles legal market and the Supreme Court practitioners' market for comparably skilled and experienced attorneys.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of January 2023 at Los Angeles, California.

*Carol Sobel*

CAROL A. SOBEL

DECLARATION OF CAROL SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES